UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF Florida
Orlando Division

GARY CROSS,

    **Plaintiff**

v.

OCEAN OPTICS, INC. d/b/a OCEAN INSIGHT

    **Defendants.**

Civil Action No.

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff Gary Cross, by counsel, submits this Complaint pursuant to this Court's diversity jurisdiction seeking to recover for damages for common law breach of contract under Florida law and violation of the Virginia Wage Pay Act, Virginia Code § 40.1-29. In support of his Complaint, Cross states as follows:

### PARTIES

1. Defendant Ocean Optics, Inc. d/b/a Ocean Insight ("Ocean Insight") is a corporation organized under Florida law with a principal place of business at 3500 Quadrangle Boulevard, Orlando, Florida 32817.

2. Plaintiff Gary Cross is an individual who resides in Deltaville, Virginia. Cross was employed by Ocean Insight from on or about October 24, 2022 to March 7, 2023.

### JURISDICTION & VENUE

3. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant are citizens of different states and the matter in controversy

1

exceeds $75,000.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the Defendant is a resident of the state in which this district is located.

## FACTUAL ALLEGATIONS

**A. Ocean Insight Induces Cross to Leave his Prior Job with the Promise of a Large Sign-on Bonus**

5. In or around late June 2022, Michael Edwards, the President and Chief Executive Officer of Ocean Insight, approached Cross about a job opportunity with the company.

6. At that time, Cross had been employed for nearly five years as the Global Director of Services for Repligen Corporation ("Repligen").

7. In addition to his regular income at Repligen, Cross had been issued Restricted Stock Units ("RSUs") that were scheduled to vest in February 2023, and he was further on track to receive a substantial bonus payment in March 2023.

8. Cross knew that if he resigned from his position at Repligen to take a job at Ocean Insight, he would forego any distributions from the RSUs, as well as any bonus payments, which Cross estimates would total more than $200,000; accordingly, Cross was initially reluctant to consider Edwards' invitation to work for Ocean Insight.

9. Edwards was persistent, however, and informed Cross that Ocean Insight would offer Cross a $200,000 sign-on bonus (the "Sign-On Bonus") if Cross accepted a job with Ocean Insight.

10. Cross agreed to Edwards' proposal, though he noted specifically that the Sign-On Bonus would need to be a guaranteed payment; i.e., Cross would not accept a job at Ocean Insight if he would be required to meet a detailed set of performance metrics simply to secure the Sign-On Bonus.

11. Edwards agreed to Cross' proposed terms, though noted that the Sign-On Bonus would be paid in April 2023 to allow Ocean Insight time to work the payment into its annual budget.

12. Both sides also agreed that Cross would be permitted to work for Ocean Insight out of his residence in Deltaville, Virginia.

**B. Ocean Insight Issues Cross an Offer Letter**

13. In accordance with Cross' discussion with Edwards, on or about September 30, 2022, Ocean Insight sent Cross an offer letter (the "Offer Letter") extending an offer of employment to Cross to serve as the Vice President and General Manager for the Light Technologies Business Unit ("LTBU").

14. Among other things, the Offer Letter purported to offer Cross a base salary, as well as bonus and equity compensation.

15. Furthermore, the Offer Letter provided that Cross would be compensated with a $200,000 payment "subject to applicable tax and withholdings, payable in April 2023," which reflected the Sign-On Bonus discussed by Cross and Edwards.

16. According to the Offer Letter, the only circumstances whereby Cross would not receive the Sign-On Bonus would be if he were to "resign within 24 (twenty-four) months from the date of this payment" or if his "employment is terminated for cause."

17. The Offer Letter also stated that any agreements he had with Ocean, including the Offer Letter, would be "governed by Florida law" but that he was "also subject to respective state and local laws related to [his] employment."

**C. Ocean Insight and Cross Endorse an Executive Employment Agreement**

18. Separately, Cross and Ocean Insight endorsed an "Executive Employment

3

Agreement" (the "Employment Agreement") purporting to outline the terms and conditions of Cross' employment.

19. The Employment Agreement provided for a three-month "Initial Term" of employment, after which the parties were required to provide one-months' notice before terminating the relationship, unless there was a death or disability, a sale of the company, or a "For Cause" termination.

20. The Employment Agreement defines a "For Cause" termination as a termination based on a finding that the Employee "has violated or is violating [the Employment] Agreement or any law, company policy or instructions of Employer's Board of Directors, or has committed or is committing any willful or negligent acts which adversely affect the Employer."

21. The Employment Agreement also contained an integration clause purporting to incorporate the Offer Letter into the terms of Cross' employment relationship.

22. Furthermore, the Employment Agreement states that "the prevailing party has the right and remedy to receive reimbursement for reasonable legal expenses, including attorneys' fees, which prevailing party may incur in enforcement [the Employment] Agreement or in bringing an action for breach."

### D. Cross Achieves Notable Results for Ocean Insight

23. Cross began his job as the VP and GM of the LTBU on or about October 24, 2022.

24. After starting, he immediately recognized that Ocean Insight's financial picture was worse than he had been led by Edwards to believe.

25. Most notably, Cross observed that revenues had been steadily declining in the years leading up to the point at which he had been recruited by Edwards.

26. Nevertheless, Cross immediately set about to identify the root causes of Ocean

Insight's financial struggles and suggest changes to improve the company's outlook.

27. Within one financial quarter, Ocean Insight saw a marked turnaround it its quarterly revenue, and the company was projected to hit a 12-month high on its revenue performance in early 2023.

**E. Ocean Insight Terminates Cross Without Cause**

28. Notwithstanding Cross' exceptional performance and measurable results, Ocean Insight terminated Cross on March 7, 2023.

29. Prior to his termination, Cross had never engaged in any conduct that could reasonably be construed as forming a legitimate basis for terminating his employment "for cause."

30. Nor did Ocean Insight ever suggest to Cross, prior to his termination, that it felt his performance was inadequate or that he had somehow engaged in conduct that merited a for-cause termination.

31. Moreover, when terminating Cross, Ocean Insight did not provide him with a specific reason for the termination.

32. At most, Ocean Insight sent Cross an email on March 10, 2023—three days after the termination—alleging vaguely that the termination was "based on not meeting performance expectations."

33. Of course, the mere contention that Cross had net met Ocean Insight's subjective and unspecified "performance expectations" did not constitute cause to terminate Cross under the terms of the Employment Agreement.

34. Moreover, Cross had, throughout his tenure, met or exceeded Ocean Insight's performance expectations.

## COUNT I: BREACH OF CONTRACT UNDER FLORIDA COMMON LAW

35. Cross incorporates the preceding paragraphs by reference.

36. The Offer Letter and the Employment Agreement (collectively, the "Agreements") constitute valid and binding contracts between Cross and Ocean Insight.

37. Ocean Insight breached the Agreements by failing to pay Cross amounts owed under the Agreements; principally, Ocean Insight failed to pay Cross for the $200,000 Sign-On Bonus.

38. As a result of Defendant's breach of the Agreements, Cross has incurred substantial damages.

## COUNT II: VIOLATION OF THE VIRGINIA WAGE PAY ACT
### (Virginia Code § 40.1-29)

39. Cross incorporates the preceding paragraph by reference.

40. At all relevant times, Cross was an employee of Ocean Insight within the meaning of Virginia Code § 40.1-29.

41. At all relevant times, Ocean Insight was an employer within the meaning of Virginia Code § 40.1-29.

42. Upon termination of Cross' employment, Ocean Insight failed to pay Cross the Sign-On Bonus and therefore Ocean Insight did not pay Cross for all amounts due to him for work performed prior thereto.

43. After termination of Cross' employment, Ocean Insight failed to pay Cross the Sign-On Bonus and therefore withheld at least part of the amounts owed to him without his signed authorization.

44. As a direct and proximate result of Ocean Insight's failure to pay Cross amounts owed, Cross has incurred substantial damages.

## PRAYER FOR RELIEF

45. WHEREFORE, Cross respectfully ask that the Court enter judgment in his favor granting him legal and equitable relief as the Court may deem just, including, but not limited to:

   a. A finding that Ocean Insight terminated Cross' employment without cause and in violation of the Agreements;

   b. Compensatory and consequential damages;

   c. Liquidated damages;

   d. Pre and post-judgment interest as provided by law;

   e. Any other relief to which Plaintiffs are entitled by law and to which the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all triable issues pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: May 1, 2023

Respectfully submitted,

_____/s/_____

Charles Eiss
Law Offices of Charles Eiss, P.L.
7951 SW 6th Street, Suite 112
Plantation, Florida 33324
954-914-7890
855-423-5298
chuck@icelawfirm.com

*Counsel for Plaintiff*